UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: ENFORCEMENT OF PHILIPPINE FORFEITURE JUDGMENT AGAINST ALL ASSETS OF ARELMA, S.A., FORMERLY HELD AT MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, INCLUDING, BUT NOT LIMITED TO, ACCOUNT NUMBER 165-07312, AND ALL INTEREST, INCOME OR BENEFITS ACCRUING OR TRACEABLE THERETO | ) | Misc. No. _______ |

**UNITED STATES' APPLICATION TO REGISTER AND ENFORCE A FOREIGN FORFEITURE JUDGMENT PURSUANT TO 28 U.S.C. § 2467**

Applicant United States of America, by and through its undersigned attorneys, respectfully brings this application pursuant to 28 U.S.C. § 2467 as follows:

## I. NATURE OF THE APPLICATION

1. This application seeks entry of an order to register and enforce a final Philippine Court forfeiture judgment pursuant to 28 U.S.C. § 2467(c)(1) and (d)(1) against all assets in the name of Arelma S.A. ("Arelma"), formerly held at Merrill Lynch, Pierce, Fenner & Smith, Incorporated, for the benefit of former Philippine President Ferdinand Marcos (the "Arelma Assets"). These assets, with an approximate value of over $40 million, were forfeited to the Government of the Republic of the Philippines (the "Republic") by an April 2, 2009 forfeiture judgment entered by a Philippine anti-corruption court, the Sandiganbayan, as affirmed on appeal by the Philippine Supreme Court on April 25, 2012, and March 12, 2014, and made enforceable by Entry of Judgment by the Clerk of the Philippine Supreme Court on July 22, 2014, and by a Writ of Execution issued by the Sandiganbayan on August 18, 2014. On February 11, 2016, the Assistant Attorney General for the Criminal Division of the United States

Department of Justice ("the AAG"), certified the Republic's subsequent request for enforcement of the forfeiture judgment and related orders for enforcement in the interest of justice. As set forth herein, following notice of this application to potential respondents, the United States requests that this Court register and enforce the Philippine forfeiture judgment and enter judgment forfeiting the Arelma Assets to the United States based upon the Philippine judgment.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides, in relevant part, that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## III. SUBJECT OF APPLICATION

3. The United States seeks to register, enforce, and give effect to the certified Philippine forfeiture judgment and related orders to forfeit to the United States of America the following assets located in the United States (the Arelma Assets), more specifically described as:

> All Assets of Arelma, S.A., formerly held at Merrill Lynch, Pierce, Fenner & Smith, Incorporated, including, but not limited to, account number 165-07312, and all interest, income or benefits accruing or traceable thereto.

4. As a result of litigation brought by judgment creditors of the Marcos estate in the New York State courts, the Arelma Assets are currently held in the custody of the New York City Commissioner of Finance (the "Commissioner"). *See Swezey v. Merrill Lynch, et al.*, Consent Order, Index No. 104734/2009 (New York Supreme Court, New York County, January 29, 2010).

5. The Arelma Assets are the subject of a forfeiture judgment entered by a Philippine anti-corruption court, the Sandiganbayan, as affirmed on appeal by the Philippine

Supreme Court on April 25, 2012, and March 12, 2014, and made enforceable by Entry of Judgment by the Clerk of the Philippine Supreme Court on July 22, 2014, and by a Writ of Execution issued by the Sandiganbayan on August 18, 2014. *See* Attachment A (AAG Certification annexing these orders as Exhibits 1-5.).[1]

## IV. BACKGROUND

6. The Philippine Republic elected Ferdinand E. Marcos president in 1965 and 1969. In September 1972, Marcos declared martial law. His dictatorship ended in 1986, and he and his wife fled to Hawaii. Ferdinand Marcos died on September 28, 1989.

7. Arelma S.A. was formed as a bearer share corporation under Panamanian law for the purpose of maintaining an investment account on behalf of Ferdinand Marcos at Merrill Lynch, Pierce, Fenner & Smith, Incorporated in New York into which $2 million was deposited in 1972. The deposit has increased in value and is now worth over $40 million.

8. Upon assuming office in 1986, President Corazon C. Aquino established the Presidential Commission on Good Government (the "Presidential Commission"), with a mandate to seek recovery of ill-gotten wealth accumulated by Marcos, his family, and associates.

9. At the Republic's request, in 1986, the Government of Switzerland froze a series of assets pursuant to mutual legal assistance procedures, including two bearer shares representing the ownership of Arelma. The Swiss government later transferred the Arelma shares and other Marcos assets to an escrow account at the Philippine National Bank (PNB) pending a ruling by the Sandiganbayan regarding ownership. *Republic of Philippines v. Pimentel,* 553 U.S. 851, 858 (2008). The shares of Arelma are now in the custody of the Philippine National Bank.

10. In 1991, the Republic initiated forfeiture proceedings against various assets held

[1] The Philippine certified orders and judgments do not have unique filing numbers and are referred to herein by date, court, and case number.

by Ferdinand and Imelda Marcos, including the Swiss assets, property held by Arelma, and other assets. *See* Attachment A, Exhibit 1 (April 2, 2009 Sandiganbayan Judgment) at 29-30, n. 25. In 1996, the Republic filed a motion for summary judgment, which was denied in order to permit consideration of a proposed global settlement. *Id.* at 31. However, the settlement was rejected by the Philippine courts.

11. After the settlement was rejected by the Philippine courts, the Republic filed a second motion for summary judgment in March of 2000 against assets transferred to the PNB escrow account by Switzerland, but the motion did not include the Arelma Assets in New York. *Id.* at 32, 36. The Sandiganbayan initially granted the Republic's second summary judgment motion in 2000, but later reversed itself. On appeal, the Philippine Supreme Court reinstated the first Sandiganbayan decision, granting summary judgment and ordering forfeiture of the Swiss assets. *Id.* at 34; *see also, Republic of the Philippines v. Honorable Sandiganbayan, Ferdinand E. Marcos, et al.,* G.R. No. 152154 (Phil. 2003) (*en banc*) (the "Swiss Deposits Decision"). Among other things, the Philippine Supreme Court found that the Republic had attached sworn statements of witnesses that substantiated the ill-gotten nature of the Swiss bank deposits, which the Marcoses failed to refute with admissible evidence.[2]

12. In 2004, the Republic again moved for partial summary judgment, specifically seeking forfeiture of the Arelma Assets. *See* Attachment A, Exhibit 1 (April 2, 2009 Sandiganbayan Judgment) at 36. On April 2, 2009, the Sandiganbayan issued an order granting the Republic's motion for summary judgment and forfeiting the Arelma Assets to the Philippine government. *Id.* The decision was affirmed by the Supreme Court of the Philippines in a

---

[2] The Philippine court's discussion of this issue can be found at the text immediately following footnote 59 in the Swiss Deposits Decision. *See* http://sc.judiciary.gov.ph/jurisprudence/2003/jul2003/152154.htm.

decision dated April 25, 2012.[3] *See* Attachment A, Exhibit 2 (April 25, 2012, Philippine Supreme Court Decision). A motion for reconsideration was denied by the Supreme Court in a resolution dated March 12, 2014. *See* Attachment A, Exhibit 3 (March 12, 2014, Philippine Supreme Court Resolution).[4] Entry of Judgment was then issued by the Supreme Court Clerk stating that the forfeiture judgment became final and executory on March 31, 2014. *See* Attachment A, Exhibit 4 (July 22, 2014, Philippine Supreme Court Clerk's Entry of Judgment). Finally, a Writ of Execution was issued by the Sandiganbayan on August 18, 2014. *See* Attachment A, Exhibit 5 (August 18, 2014, Sandiganbayan Writ of Execution).

13. Pursuant to the Treaty Between the Government of the United States of America and the Republic of the Philippines on Mutual Legal Assistance in Criminal Matters, U.S.-Phil., Nov. 13, 1994, S. Treaty Doc. No. 104-18 (1995)(the "U.S.-Philippines MLAT"), the Republic formally requested the assistance of the United States to enforce this forfeiture judgment against Arelma, and all its assets and properties.

14. Pursuant to 28 U.S.C. § 2467(b)(2), on February 11, 2016, the Assistant Attorney General for the Criminal Division of the U.S. Department of Justice certified that the Republic's request for enforcement of the Philippine judgment was in the interests of justice.[5] Attachment A. Such determinations are not subject to judicial review. 28 U.S.C. § 2467 (b)(2).

15. The heirs of former President Marcos were notified of the Philippine forfeiture proceedings. Several family members, including former First Lady Imelda Marcos, participated in lengthy forfeiture and appellate proceedings in the Philippine Courts. *See* Attachment D,

---

[3] In addition to the certified copy attached hereto, the published version of this decision can be cited as *Marcos Jr. v. Republic of the Philippines*, 671 S.C.R.A. 280, 288 (S.C., Apr. 25, 2012) (Phil.). The decision can also be found at: http://sc.judiciary.gov.ph/jurisprudence/2012/april2012/189434.htm.

[4] *See* http://sc.judiciary.gov.ph/jurisprudence/2014/toc/march.php to download March 12, 2014, ruling on motion for reconsideration.

[5] On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. Attorney General Order No. 2820-2006, 2006 OLC Lexis 2 (May 9, 2006).

January 8, 2015, Affidavit of Leila M. De Lima, Secretary of Justice of the Republic of the Philippines, at ¶ 4 (heirs of Marcos were "duly notified of all court proceedings").

16. The Plaintiff class in the *Sweezey* litigation, which has sought to enforce a judgment against the Marcos estate, had actual notice of the forfeiture litigation in the Philippines. *See, e.g. Chavez v. PCGG and Gunigundo,* G.R. No. 130716, 299 S.C.R.A. 744, 757-8 (S.C., Dec. 9, 1998) (Phil.).[6]

## V. ENFORCEMENT OF PHILIPPINE JUDGMENT

17. The United States and the Philippines are parties to a formal, international agreement obligating each nation to provide mutual legal assistance in investigations, prosecutions, and proceedings related to criminal matters, including the forfeiture and immobilization of assets. *See* U.S.-Philippines MLAT at Articles 1(2)(g), 16(2).[7] Accordingly, the Republic is a "foreign nation" within the meaning of 28 U.S.C. § 2467(a)(1).

18. The Sandiganbayan ordered the forfeiture of the Arelma Assets on April 2, 2009, which was affirmed by the Philippine Supreme Court on April 25, 2012. The Philippine Supreme Court denied a motion for reconsideration on March 12, 2014, and entered Judgment on March 31, 2014. The Clerk of the Philippine Supreme Court issued an Entry of Judgment on July 22, 2014, and the Sandiganbayan issued a Writ of Execution on August 18, 2014. As set forth in the affidavit of Leila M. De Lima, Secretary of Justice of the Republic of the Philippines, "[t]hese issuances are not subject to further review or appeal. This case has, therefore, attained finality." *See* Attachment D (De Lima Affidavit) at ¶ 5.

19. The Philippine judgment is enforceable because the offenses giving rise to

[6] The decision can also be found at: http://sc.judiciary.gov.ph/jurisprudence/1998/dec1998/130716.htm.
[7] The United States and the Philippines are also parties to the U.N. Convention against Corruption, which provides for mutual forfeiture assistance. *See* United Nations Convention Against Corruption, opened for signature Dec. 9, 2003, S. Treaty Doc. No. 109-6 (2006) (U.S. ratification), at Articles 3, 46(3), 55. Ratifications at https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XVIII-14&chapter=18&lang=en.

forfeiture under Philippine law constitute foreign predicates for money laundering as enumerated in 18 U.S.C. § 1956(c)(7)(B)(ii), (iv). The Philippine forfeiture judgment was issued under the Philippine burden shifting statute, Republic Act No. 1379, which by its terms is directed at the conduct of public officials while acting in public service, and authorizes forfeiture of only unlawfully acquired property. *See* Attachment B (Republic Act No. 1379, June 18, 1955 ("R.A. 1379")). Under Philippine law, the unlawful acquisition of property by a public official includes violations of Republic Act No. 3019, including, *inter alia*, offenses enumerated in the forfeiture petition involving bribery, receipt of gifts in connection with official acts, and having a pecuniary interest in a business, contract or transaction in which he intervenes in his official capacity.[8] *See* Attachment C (Republic Act No. 3019, August 17, 1960 ("R.A. 3019")) at Sec. (3)(b),(c),(h).

20. The Philippine judgment is also enforceable under the alternative, dual forfeitability prong of 28 U.S.C. § 2467(a)(2) because, if certain of the alleged crimes were committed in the United States, the proceeds would be forfeitable under U.S. law. For example, the receipt of bribe payments, kickbacks, and gifts in exchange for official acts as alleged in the Philippine forfeiture petition would violate U.S. criminal laws prohibiting bribery, extortion and both property and honest services fraud. *See* 18 U.S.C. §§ 201, 1341, 1343, 1346, and 1951. Similarly, embezzlement or misappropriation of government funds as alleged in the Philippine forfeiture petition would violate 18 U.S.C. §§ 641 and 666. Under 18 U.S.C. § 981(a)(1)(C), U.S. law provides for civil forfeiture based upon each of these violations, and, like R.A. 1379,

---

[8] The presumption of unlawful acquisition under R.A. 1379 would likewise apply to property acquired by a public official through other violations of Philippine law not specifically enumerated in the forfeiture petition that would constitute offenses set forth in 18 U.S.C. § 1956(c)(7)(B)(ii) and (iv), such as Revised Criminal Code Art. 210 (prohibiting receipt of gifts or benefits in connection with official duties), Art. 212 (prohibiting acts of bribing public officials), Art. 213 (prohibiting schemes to defraud the government or public treasury), Art. 217 (prohibiting appropriation or misappropriation of public funds).

authorizes forfeiture of property unlawfully acquired through the abuse of public office for pecuniary gain.

21. The Sandiganbayan had ample jurisdiction over the subject matter. In 1986, after Marcos was overthrown, the government of President Corazon Aquino issued a series of executive orders, including E.O. Nos. 14 and 14-A, authorizing the Presidential Commission, with the assistance of the Office of the Solicitor General, to file appropriate civil and criminal suits including violations of R.A. 3019, as amended, and R.A. 1379, before the Sandiganbayan, which has exclusive authority and jurisdiction over Marcos' ill-gotten wealth recovery cases.

22. The Sandiganbayan also had *in rem* jurisdiction over the assets subject to the forfeiture order, including the Arelma Assets located in the United States. As the Philippine Supreme Court explained in response to a jurisdictional challenge from members of the Marcos family, the Sandiganbayan properly asserted *in rem* jurisdiction over property located outside of the Philippines. *See* Attachment A, Exhibit 3 at 4-5 (March 12, 2014, Philippine Supreme Court Resolution Denying Motion for Reconsideration) (Jurisdiction over *res* can be acquired by institution of legal proceedings although property may not be in actual custody).

23. Particularly in light of the extensive public litigation and the lengthy opportunities for appeal and reconsideration in the Philippine courts, there also is no reason to conclude that the judgment was obtained by fraud.

24. Following the filing of this application, the United States will provide, or seek the assistance of the Government of the Republic of the Philippines to provide notice of this application to heirs of former President Marcos who were parties to the litigation in the Philippine courts, and will provide direct notice to counsel for the Philippine National Bank, counsel for the *Swezey* class, and the Commissioner of Finance of the City of New York. The

United States will also post notice on an official government internet site (www.forfeiture.gov) for at least thirty days, consistent with the procedures applicable in a domestic civil forfeiture action under Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

25. After providing notice of this Application, the United States will seek entry of such orders as may be necessary to register, enforce, and give effect to the certified Philippine forfeiture judgment and related orders as if the judgment had been entered by a court in the United States.

## VI. REQUEST FOR RELIEF

WHEREFORE, Applicant, the United States of America, requests that, following notice and publication, this Honorable Court:

(1) register and enforce the April 2, 2009, forfeiture judgment entered by the Sandiganbayan, as affirmed on appeal by the Philippine Supreme Court on April 25, 2012, and March 12, 2014, and made enforceable by Entry of Judgment by the Clerk of the Philippine Supreme Court on July 22, 2014, and by a Writ of Execution issued by the Sandiganbayan on August 18, 2014;

(2) decree forfeiture of the Arelma Assets in favor of the United States of America for disposition according to law as if the foreign judgment had been entered by a Court in the United States; and

(3) grant the United States such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: June 27, 2016

Respectfully submitted,

M. KENDALL DAY, CHIEF
ASSET FORFEITURE AND
MONEY LAUNDERING SECTION

DANIEL H. CLAMAN
Principal Deputy Chief, International Unit
Asset Forfeiture and Money
Laundering Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for Applicant
UNITED STATES OF AMERICA