UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: ENFORCEMENT OF            )
PHILIPPINE FORFEITURE            )
JUDGMENT AGAINST ALL ASSETS      )
OF ARELMA, S.A., FORMERLY HELD   )
AT MERRILL LYNCH, PIERCE,        )
FENNER & SMITH, INCORPORATED,    )
INCLUDING, BUT NOT LIMITED TO,   )    Misc. No. 16-1339
ACCOUNT NUMBER 165-07312, AND    )
ALL INTEREST, INCOME OR          )
BENEFITS ACCRUING OR             )
TRACEABLE THERETO                )

FILED
JUL 15 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
July 15, 2019 [Dkt. Nos. 5, 15, 17, 22]

Proposed intervenors Jose Duran ("Duran") and Jenna Roxas ("Roxas") seek to intervene as of right in this 28 U.S.C. § 2467 action brought by the United States to enforce a forfeiture judgment entered in the Philippines against $40 million in assets of a company, Arelma, S.A., once controlled by ex-Philippine president Roger Marcos ("the Arelma funds"). Duran represents a class of human rights victims ("the Duran Class" or "the Class") who have two judgments against the Marcos estate and who have fought for years to seize these Arelma funds in partial satisfaction of their judgments. Likewise, Roxas represents her father's estate ("Roxas estate") and the Golden Budha [sic] Corporation ("GBC"), which seek to seize the Arelma funds in satisfaction of their own judgments against the Marcos estate arising from Marcos's torture of Roxas's father and theft of a treasure he discovered. The Government does not oppose the Duran Class's motion to intervene, although it reserves the right to challenge the class's standing to raise certain arguments. The Government does, however, oppose Roxas's intervention.

1

Additionally, Duran filed a motion to change venue to the Southern District of New York. The Government opposes this motion and would like the case to remain in the District of Columbia.

The two motions to intervene and the motion to change venue are now fully briefed and ripe for review. Upon consideration of the parties' submissions and the entire record herein, I have concluded that Duran's motion to intervene must be GRANTED. In addition, Duran's motion to change venue is GRANTED. The Roxas motion to intervene, however, is DENIED without prejudice so that the judge assigned in the Southern District of New York can decide its virtue. Accordingly, this case is ordered transferred to the United States District Court for the Southern District of New York.

## BACKGROUND

Before delving into Duran's motions to intervene and change venue, a little background on the pot of money at issue in this case, the various parties jockeying to drain it, and how they have attempted to do so would seem appropriate.

### A. The Arelma Funds

Writing for the Supreme Court, Justice Kennedy gave a succinct history of the funds that are at issue here:

> In 1972, Ferdinand Marcos, then President of the Republic [of the Philippines], incorporated Arelma, S.A. (Arelma), under Panamanian law. Around the same time, Arelma opened a brokerage account with Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch) in New York, in which it deposited $2 million. As of the year 2000, the account had grown to approximately $35 million.
> Alleged crimes and malfeasance by Marcos during his presidency became the subject of worldwide attention and protest. . . . After Marcos fled the Philippines in 1986, the [Philippine Presidential] Commission [on Good

2

> Governance] asked the Swiss Government for assistance in recovering assets—including shares in Arelma—that Marcos had moved to Switzerland. In compliance the Swiss Government froze certain assets and, in 1990, that freeze was upheld by the Swiss Federal Supreme Court. In 1991, the Commission asked the Sandiganbayan, a Philippine court of special jurisdiction over corruption cases, to declare forfeited to the Republic any property Marcos had obtained through misuse of his office. . . .
>
> The Swiss assets were transferred to an escrow account set up by the Commission at the Philippine National Bank (PNB), pending the Sandiganbayan's decision as to their rightful owner. The Republic and the Commission requested that Merril Lynch follow the same course and transfer the Arelma assets to an escrow account at PNB. Merrill Lynch did not do so. Facing claims from various Marcos creditors . . . Merrill Lynch instead filed an interpleader action under 28 U.S.C. § 1335.

*Republic of Philippines v. Pimentel*, 553 U.S. 851, 857–59 (2008). The United States District Court for the District of Hawaii awarded the disputed Arelma funds to a class of victims of the Marcos regime in partial satisfaction of a judgment it previously entered in favor of the class. *See id.* at 858–60. The Supreme Court ultimately overturned this award because the Republic of the Philippines ("the Republic") and the Commission—who claimed sovereign immunity and did not participate in the interpleader action—were necessary parties under Federal Rule of Civil Procedure 19(b). *See id.* at 872.

Thereafter, the Arelma funds were returned to Merrill Lynch. *Swezey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 973 N.E.2d 703, 707 (N.Y. 2012). Two important things happened next. First, the class of human rights victims went to the New York state courts in an attempt to enforce the $2 billion class judgment against the Arelma funds in a state turnover proceeding. *See id.* As part of this proceeding, Merrill Lynch transferred the Arelma funds to New York City's Commissioner of Finance pursuant to a court order. *Id.* at 707 n.5. (The parties agree that the New York City Department of Finance

3

held the funds from 2010 until 2017, when they were transferred to the New York State Office of the State Comptroller, Office of Unclaimed Funds. [Dkt. #1] ¶ 4; [Dkt. #5] ¶ 4; [Dkt. #24-3]; [Dkt. #24-4] ¶ 3; [Dkt. #26] at 1.) "Second, the Sandiganbayan ruled that the funds Marcos used to establish the Arelma account had been stolen from the Republic and that the company's assets had therefore been forfeited to the Republic." *Swezey*, 973 N.E.2d at 707.

Like the U.S. Supreme Court, the New York Court of Appeals ultimately ruled that the Republic was a necessary party to the state turnover proceedings and ordered it dismissed without prejudice. *Id.* at 711. Undeterred, the human rights victims tried the New York courts again two years later, but the New York Supreme Court Appellate Division stayed the case pending an attempt by the Philippines to enforce the Sandiganbayan's judgment in the United States. *Swezey v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 997 N.Y.S.2d 45, 46–47 (N.Y. App. Div. 2014). This action before me is that attempt.

### B. The Duran Class

Jose Duran is a member and representative of a class of 9,539 Filipino human rights victims who seek to intervene in this action. [Dkt. 5-2] ¶¶ 1–2. This is the same class of victims who were awarded a roughly $2 billion judgment against Ferdinand Marcos's estate in the District of Hawaii. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 772, 787 (9th Cir. 1996); [Dkt. 5-2] ¶ 5. The class later secured a second judgment of over $350 million for civil contempt after the Marcos estate improperly disposed of estate assets. *See In re Estate of Marcos Human Rights Litig.*, 496 F. App'x 759, 760 (9th Cir.

2012). As I explained above, the Duran Class has attempted to enforce its judgments against the Arelma funds both in Hawaii and in New York.[1] Crucially, after the Arelma Funds were transferred back to Merrill Lynch following the Supreme Court's 2008 decision in *Pimentel*, the Duran Class levied the funds in New York. [Dkt. 5-2] ¶ 20; [Dkt. 5-8] ¶ 2; [Dkt. 24-2] at 3.

## C. Philippine National Bank

PNB has entered an appearance in this action as a respondent. [Dkt. 11]. That is the only action it has taken. PNB held the shares of Arelma, S.A. in escrow, although it is unclear if it still does, since the Sandiganbayan and Philippine Supreme Court ordered the Arelma funds forfeited to the Republic. *See Swezey*, 973 N.E.2d at 547.

## DISCUSSION

### A. Intervention

The first thing I must determine is who the proper parties are in this action. Before me is a motion to intervene by Duran on behalf of the Duran Class. A proposed intervenor must have standing to intervene and must satisfy the requirements of the Federal Rules of Civil Procedure. *Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013). For the following reasons, I will grant Duran's motion to

---

[1] The Duran Class apparently also attempted to enforce the judgment in the Philippines but was stymied by, among other things, an $8.4 million filing fee demanded by the Republic's courts, the propriety of which took nine years to litigate. *See* [Dkt. #5-2] ¶ 16. The UN's Human Rights Committee, at least, concluded "that the length of time taken to resolve [this filing fee] issue was unreasonable, resulting in a violation of the [Duran Class's] rights under" international law. *Pimentel et al. v. Philippines*, U.N. Doc. CCPR/C/89/D/1320/2004 (2007).

5

intervene.²

## 1. Standing

As a preliminary matter, Duran has standing to intervene. In order to establish Article III standing, "[a] prospective intervenor . . . must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732–33 (D.C. Cir. 2003). Duran shows all three.

First, an injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Here, the Duran Class holds two judgments against the Marcos' estate. The Class levied the Arelma funds, which, for the moment, remain part of that estate. This levy means the Duran Class is not merely a general unsecured creditor—it has a specific interest in the Arelma funds. *See U.S. v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) (explaining in the criminal forfeiture context that general creditors of an estate "can have no interest in particular assets [in the estate] . . . *unless they have already secured a judgment against the debtor and perfected a lien against a particular item*"

---

² The United States "does not oppose the participation of Mr. Duran on his own behalf and as a member of the plaintiff class he represents in these proceedings for the purpose of raising objections to the enforcement of the Philippine judgment," however it "does not concede that Mr. Duran or the class he represents has standing to raise any particular argument" and "respectfully reserves [the] right to oppose any objections raised" by him. [Dkt. #6] at 5. In order to prevent future re-litigation of these matters, and because standing is jurisdictional, I will set forth the full intervention analysis with respect to Duran.

(emphasis added)).³ New York's courts have stayed the Class's turnover action seeking to satisfy its judgments pending the outcome of the present action. But if the Government succeeds in enforcing the Republic's forfeiture judgment in this action, the Arelma funds will no longer be part of the Marcos estate and will no longer be available to satisfy the Duran Class's judgments, mooting the New York turnover action. Thus, the present action presents an imminent, threatened interference with the Duran Class's very real interest in asserting its rights to the Arelma funds, meaning Duran has shown an injury-in-fact.⁴ *See In re $6,871,042.36*, 217 F. Supp. 3d 84, 92 (D.D.C. 2016) (finding standing where proposed intervenor's "ability to establish its right to [claimed funds] [wa]s clearly impacted by" a foreign judgment the United States sought to enforce under 28 U.S.C. § 2467) (citing *CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) (stating that a party "suffers a constitutionally cognizable injury by the loss of an opportunity to purse a benefit . . . even though the [party] may not be able to show that it was certain to receive that benefit had it been accorded the lost opportunity")).

---

³ Roxas's motion is denied because it does not seem she has any more claim to the Arelma funds than a general judgment creditor and so lacks standing.

⁴ It is true, as the New York Court of Appeals noted, that "[i]f the Arelma assets belong to the people of the Philippines—as that country's highest court has declared—the [Duran] class has no claim to that property . . . ." *Swezey*, 973 N.E.2d at 711. But it is also true that a U.S. court may not enforce a foreign judgment if it suffers from any of the defects outlined in 28 U.S.C. § 2467(d)(1). The Duran Class claims that a number of these defects apply to the Republic's judgment. *See* [Dkt. 5] at 8–12. No other party before the Court could or would raise these defects, and the statute recognizes that other potential claimants to targeted assets may intervene. *See* 28 U.S.C. § 2467(c)(2)(A) ("the United States shall be the applicant and the defendant *or another person or entity affected by the forfeiture or confiscation judgment* shall be the respondent" (emphasis added)).

Second, Duran's injury—his inability to assert the Class's interest in the Arelma funds—would be caused by the entry of final judgment in this § 2467 action without providing Duran the right to intervene. In *Pimentel*, the Supreme Court contemplated that the Duran Class would ultimately get its day in court: Although the Duran Class could not proceed against the Arelma funds in federal court at that time, the Court reasoned that either the Republic would ultimately lose its claim to the Arelma funds in the Philippines, which would permit the Duran Class to file a new interpleader action in which the Republic would not be a necessary party, or the Republic would win its case in the Philippines, which would require it to consent to U.S. jurisdiction and fight the Duran Class's claims in order to collect the funds. *See* 553 U.S. at 873. If the Republic can ask the United States to enforce the forfeiture judgment in its stead but the Duran Class is not permitted to assert its interests in the funds, then the solution contemplated by the Supreme Court will be frustrated. Accordingly, I conclude that denying Duran the right to intervene in this action would cause it the harm I outlined above.

Third, allowing Duran to intervene will redress this harm. Although the Duran Class may ultimately fail to obtain the Arelma funds because the Government may succeed in enforcing the Republic's judgment, allowing Duran to intervene will redress the harm that would come from the Class not even getting the opportunity to assert its interest in the Arelma funds. Therefore, I conclude that Duran has standing to intervene in this action.

### 2. Rule 24

Duran also satisfies the requirements for intervention as of right under Federal

8

Rule of Civil Procedure 24(a). That rule provides that courts must allow the intervention of any party who (1) makes a timely application to intervene and (2) claims a legally protected interest in the action (3) where the action threatens to impair that interest and (4) no party to the action can be an adequate representative of the applicant's interests. Fed. R. Civ. P. 24(a); *In re Restraint of Twenty Real Properties in California and Florida*, No. 16-mc-1612, 2019 WL 481167, at *3 (D.D.C. Feb. 6, 2019). I find that Duran satisfies all four requirements.

First, Duran's motion to intervene was timely filed. Whether a motion to intervene is timely lies in the court's discretion and is determined by all of the circumstances, including the purpose for which intervention is sought. *NAACP v. New York*, 413 U.S. 345, 366 (1973); *United States v. McDonald*, 432 U.S. 385 (1977). Here, Duran filed his motion before the Government had done anything except file the action. *See* [Dkt. 5]. There can be no doubt this motion was timely.

Second, Duran has claimed a legally protected interest. Our Circuit Court has repeatedly held that where a prospective intervenor "has suffered a cognizable injury sufficient to establish Article III standing, [that party] also has the requisite interest under Rule 24(a)(2)." *Jones v. Prince George's Cty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). As I explained above, Duran has standing to intervene, so he claims a legally protected interest.

Third, this action threatens to impair Duran's legally protected interest. "In determining whether an applicant's interests will be impaired, courts in this circuit look to the 'practical consequences' that the applicant may suffer if intervention is denied."

*Forest Cty. Potawatomi Comm. v. United States*, 317 F.R.D. 6, 14 (D.D.C. 2016) (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). As I explained above, allowing this action to proceed without giving the Duran Class the opportunity to intervene will prevent the Class from advocating for its interests in the Arelma funds and would almost certainly moot the Duran Class's (currently-stayed) turnover action in New York.

Fourth, no other party can adequately represent the Duran Class's interests. At the moment, the only parties to this action are the United States, acting on behalf of the Republic, and the Philippine National Bank, which has also acted on the Republic's behalf in the past. Neither party has any incentive to raise the arguments against enforcement of the Republic's forfeiture judgment that the Duran Class has.

Duran has standing and has satisfied the requirements for intervention as of right under Rule 24. Therefore, Duran's motion to intervene is GRANTED.

### B. Change of Venue

Having granted Duran's motion to intervene, I must next consider his motion to change venue to the Southern District of New York. [Dkt. #22]. A court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Duran seeks a change of venue because the Arelma funds are located in New York, that court is the site of related Marcos litigation, and the only identifiable witnesses are located in New York. [Dkt. #22] at 3–5. The Government opposes a change of venue because it claims its choice of forum is entitled to deference, the statute under which this action was brought

10

contains a special venue provision, and its representatives are located in Washington and not New York. [Dkt. #24] at 3–6. After careful consideration, I will GRANT Duran's motion to change venue because I have concluded that venue lies in the Southern District of New York and that the convenience of the parties and witnesses and the interest of justice weigh in favor of transferring the case there. How so?

### a. Proper Venue

First, I easily conclude that the case could originally have been brought in the Southern District of New York. "[T]he threshold question is whether this suit could have been brought in the proposed transferee district." *DeLoach v. Phillip Morris Cos., Inc.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000). The statute providing for enforcement of foreign forfeiture judgments provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property that may be the basis for satisfaction of a judgment under this section may be found." 28 U.S.C. § 2467(c)(2)(B). As I explained above, it is undisputed that at the time this case was brought in June 2016 the Arelma funds were held by the New York City Department of Finance.[5] [Dkt. #24-3]. As the funds "[could] be found" within the Southern District of New York at the time this case was filed, the case may be transferred there. 28 U.S.C. § 2467(c)(2)(B).

---

[5] I take judicial notice of the fact that the New York City Department of Finance is located in the New York City borough of Manhattan, which is within the Southern District of New York. *See* "Finance (DOF)," *The Green Book 2015–16: Official Directory of the City of New York* (2015), http://a856-gbol.nyc.gov/GBOLWebsite/ GreenBook/Details?orgId=2871.

Curiously, the Government argues that venue does not lie in the Southern District of New York because the Arelma funds are *currently* located in Albany, New York, which is in the Northern District of New York. [Dkt. #24] at 1–3. But as I explained above, I need to assess whether venue was proper *when the case was filed* back in 2016. So the Government's argument on this issue is meritless.

**b. Convenience of Parties and Witnesses and the Interests of Justice**

Second, I conclude that the convenience of parties and witnesses and interests of justice favor transferring the case to the Southern District of New York. The party moving to transfer venue bears the burden of establishing that convenience and the interests of justice weigh in favor of transfer. *See Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985). Section 1404(a) vests discretion in the district court to conduct an "individualized, case-by-case" analysis of whether transfer is appropriate. *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Here, Duran contends that while the Government is equally at home in the Southern District of New York and the District of Columbia, he is located in New York. [Dkt. #22] at 3–4. As he and a representative of Merrill Lynch's New York office are potential witnesses, New York is most convenient for them. *Id.* at 4. Moreover, the Southern District of New York is home to a different matter, *District Attorney of New York Cty. v. Republic of Philippines*, which involves substantially the same facts as those in this case. *See* 307 F. Supp. 3d 171 (S.D.N.Y. 2018).

For its part, the Government argues that as plaintiff, its choice of venue is a

"paramount consideration" entitled to "great deference." [Dkt. #24] at 3 (quoting *United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 78 (D.D.C. 2011)). The Government contends that its choice of venue is all the more important because 28 U.S.C. § 2467 contains a special venue provision naming the District of Columbia and as such is entitled to extra weight. *See id.* at 3–4 (citing *In re Scott*, 709 F.2d 717 (D.C. Cir. 1983)). Far from being equally at home in both districts, the Government notes that the component of the Department of Justice litigating the case is located in Washington and not New York. *See id.* at 5. And as the key issue in this enforcement action is the validity of underlying Philippines judgment, the Government expects the key witnesses to be experts in Philippine law, who are unlikely to be located in the Southern District of New York. *See id.* As for the Marcos-related interpleader case in the Southern District of New York cited by Duran, the Government claims that because it is not a Section 2467 action for the enforcement of a foreign forfeiture judgment, it is of limited relevance. *See id.* I disagree.

In my judgment, most of the reasons cited by both parties are essentially valueless. First, convenience to the witnesses and parties is a wash. New York and Washington are close enough for a quick train ride, so it would not be inconvenient for lawyers, witnesses, or parties to travel from one to the other. While the Government is likely correct that the key witnesses will be experts in Philippine law, but I have no reason to believe (and the Government has not even argued) that such witnesses are more likely to

be found in Washington than in New York. Manilla would seem far more likely!⁶

Second, "plaintiff's" choice of venue, in this case, is likewise entitled to limited weight. Indeed, as the Government notes, it is not a "plaintiff," vindicating its own rights. Rather, it is an "applicant," complying with its duty to enforce rights claimed by others. *See* [Dkt. #24] at 3 n.2. Even if it were a plaintiff, Duran correctly notes that deference to a plaintiff's choice of forum "is lessened when plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *S. Utah Wilderness All. V. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)). This case has absolutely no connection whatsoever to the District of Columbia. By contrast, the Arelma funds are currently located in New York, where they are in the custody of the State of New York, held pursuant to New York state law. Thus, to the extent there are any (tenuous) local interests at play in this action, they are those of New York.

Third, the Government's focus on the statute's special venue provision is, to say the least, unconvincing. Citing a case interpreting the special venue provision in the Freedom of Information Act ("FOIA"), the Government argues that naming the District of Columbia as a catch-all venue reflects Congressional intent to place such cases at "the

---

⁶ I take judicial notice of the fact that there is one direct flight daily between Manilla's Ninoy Aquino International Airport and New York's John F. Kennedy International Airport. *See* Philippine Airlines, *International Summer Timetable* (2019), https://www.philippineairlines.com/en/~/media/files/flighttimetable/intl%20summer%20timetable%20jul%2002%202019.pdf?la=en. At present, there are no direct flights from Manilla to either of the international airports serving Washington. *Id.*

14

diplomatic nerve center of the United States" and that "courts in the District of Columbia likely have more expertise with the governing law than do courts in other districts." [Dkt. #24] at 4 (citing *Scott*, 707 F.2d at 720). But this, of course, is pure guesswork and the Government's reliance on *Scott* is misplaced. There, the legislative history indicated specific Congressional intent to develop familiarity with and expertise in FOIA cases in this Court. *See Scott*, 707 F.2d at 720. The Government here has cited no comparable legislative history, and there does not seem to be any. *See* H.R. Rep. No. 105-358, pt. 1 (1997) (explaining purpose of law that was codified at 28 U.S.C. § 2467 but providing no explanation for special venue provision); H.R. Rep. No. 106-192 (1999) (same). Neither this Court nor the Southern District of New York has heard many Section 2467 actions, but both courts have some experience with the statute.

In contrast to these ultimately inconclusive factors, considerations of judicial economy are dominant here. Courts routinely cite existing familiarity with the facts and parties involved in a case in support of transferring a case. *See, e.g.*, *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40–41 (D.D.C. 2010) ("[T]he courts' respective knowledge of the parties and facts is also relevant."); *F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 30–31 (D.D.C. 2008) ("That court's familiarity with these facts . . . supports transfer . . . for judicial efficiency purposes."); *cf. Oil, Chemical & Atomic Workers Local Union No. 6–418, AFC–CIO v. NLRB*, 694 F.2d 1289, 1294 (D.C. Cir. 1982) (holding under similar statute allowing inter-circuit transfer of administrative agency cases that "whether one circuit is more familiar with the same parties and issues or related issues than other courts" should be considered). Here, the *District Attorney of*

15

*New York County* case was actively litigated in the Southern District of New York from early 2014 until it settled just months ago. *See* Interpleader Compl., *District Attorney of New York Cty. v. the Republic of the Philippines et al* (No. 14-cv-890), ECF Nos. 2, 489. That case runs to 521 entries on the court's docket, *see* Order Granting Mot. to Withdraw as Counsel & Denying Request to Proceed *Pro Se*, ECF No. 521, and generated three lengthy and considered opinions, *see* 307 F. Supp. 3d 171 (S.D.N.Y. 2018); 2016 WL 9022581 (S.D.N.Y. Nov. 4, 2016); 2016 WL 9022580 (S.D.N.Y. Jan. 20, 2016). As one of those opinions noted, that case is part of "a long series of proceedings—spanning decades and pursued in numerous jurisdictions." 307 F. Supp. 3d at 180 n.2. Duran's request to reduce the number of jurisdictions involved seems eminently reasonable and surely accords with the interests of justice.

Finally, the Government's sole rebuttal on the issue of judicial economy is that *District Attorney* is an interpleader action involving different assets and is therefore "not nearly coextensive with the issues governing this case." [Dkt. #24] at 5–6. Poppycock! Although the ultimate issue in this case—whether the forfeiture judgment against the Arelma funds entered in the Philippines complies with the requirements of Section 2467—is different, the decades-long factual morass that a court will need to sift through in order to decide that question is nearly identical. What's more, the court in *District Attorney* has already considered (and at least to some degree disposed of) two of the arguments Duran has raised in this action for why the forfeiture judgment is invalid:

- The voluntary dismissal of cases filed by the Republic in 1986 in the Southern District of New York, Southern District of Texas, and Central District of California operate as an adjudication on the merits of the Republic's claims.

*Compare* [Dkt. #5] at 12 ¶¶ 57–61 (raising this argument) *with District Attorney*, 307 F. Supp. 3d at 197–99 (rejecting this argument as a matter of law).

- The five-year statute of limitations for Section 2467 actions bars the Republic from enforcing its forfeiture judgment because the Arelma funds were misappropriated in 1972 and the Marcoses became susceptible to service of process in the United States beginning in 1986. *Compare* [Dkt. #5] at 8 ¶¶ 29–32 (raising this argument) *with District Attorney*, 307 F. Supp. 3d at 199–204 (considering and rejecting this argument at summary judgment with respect to a number of state law claims).

The Southern District of New York's familiarity with the facts, parties, and issues at play in this action surely tips the scales in favor of transferring it to that court. Accordingly, the Motion to Change Venue filed by Duran is GRANTED.

## CONCLUSION

For the foregoing reasons, Jose Duran's [Dkt. #5] Motion to Intervene is GRANTED, Roxas's [Dkt. #17] Motion to Intervene is DENIED without prejudice so that the assigned Southern District judge can decide that matter, and Jose Duran's [Dkt. #22] Motion to Change Venue is GRANTED. The Clerk of Court is hereby ORDERED to terminate the pending Motion for Hearing [Dkt. #15] and to transfer this case to the United States District Court for the Southern District of New York. A separate Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge